**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | )   Criminal Action No. |
| | )   21-10365-NMG |
| Robert David Austin, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Robert David Austin ("Austin" or "defendant") has been indicted on one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2). The indictment includes a child pornography forfeiture allegation pursuant to 18 U.S.C. § 2253.

Currently before the Court is defendant's motion to suppress evidence obtained from searches of his home and person on November 3, 2021. Defendant also requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) ("a Franks hearing"). For the reasons that follow, the motion will be denied.

I.   **Background**

Defendant's home and person were searched pursuant to two search warrants - 21-MJ-7245-JCB and 21-MJ-7246-JCB - issued by

Magistrate Judge Boal on November 2, 2021 ("the 2021 Warrants").
An affidavit in support of the application for those warrants
("the Affidavit") had been submitted earlier that day by Special
Agent Meghan Ronayne ("Agent Ronayne").  Agent Ronayne is
employed by Homeland Security Investigations ("HSI"), the
primary investigative arm of the Department of Homeland
Security.

> **A.  The Investigation**

Agent Ronayne has investigated child exploitation and child
pornography offenses in her role at HSI since joining the Boston
office in August, 2020 ("HSI Boston").  The Affidavit she
submitted on November 2, 2021, was intended to establish
probable cause to believe that defendant had knowingly received
and possessed child pornography.  In the Affidavit, Agent
Ronayne details her investigation of messages and content
exchanged on "Chat Application A", an online chat application
known as Viber.

Viber is used for voice and video calls, instant messaging
and file sharing.  Prospective users are required to register
with a phone number and enter a user name of their choosing in
order to access those communication services.  Although Viber is
used for a variety of purposes, Agent Ronayne avers that one use
of the application is for "access to, and the exchange of, child

pornography, because of the high degree of anonymity that is offered to users".

The investigation into defendant and his Viber account emerged out of two leads.  The first came from HSI in Pretoria, South Africa ("HSI Pretoria").  HSI Pretoria assumed control of an individual's Viber account on or about January 26, 2021, after the arrest of that individual for possession and distribution of child pornography.  The subject Viber account was a member of nine group chats in which child pornography was being exchanged.  Through its subsequent investigation, HSI Pretoria discovered another Viber user, later identified as defendant, who belonged to one of those nine groups ("Group A").  Defendant's Viber account was observed to be a member of Group A on February 12, 2021, but the Affidavit does not otherwise identify when he entered or left the group.  According to the Affidavit, HSI Pretoria found that 83 files depicting apparent child pornography were shared in Group A between October 23, 2020, and February 12, 2021.

The second lead for an investigation came from HSI in Phoenix, Arizona ("HSI Phoenix").  Following up on information from HSI Pretoria, HSI Phoenix assumed control of a Viber account which belonged to an individual in Mesa, Arizona.  That account gave HSI Phoenix access to over 180 group chats engaged in the distribution of child pornography.  HSI Phoenix

discovered that defendant's Viber account was a member of three of those group chats - Groups B, C and D - and it provided that information to HSI Boston on July 8, 2021.  HSI Phoenix had also captured screen recordings of the communications that took place in Groups B, C, and D between September 20, 2020, and June 14, 2021.  Agent Ronayne reviewed the screen recordings for two of the groups and avers that most of the files exchanged therein depicted child pornography.

The Affidavit explains that defendant's Viber account remained a member of Groups B, C, and D on June 28, 2021.  Agent Ronayne further described that Groups B and C had group names referring to child pornography and group profile pictures depicting child pornography.  HSI Phoenix provided HSI Boston with an update on September 24, 2021, at which time defendant's Viber account was still a member of the subject three groups.

During the investigation, law enforcement also made inquiries into the phone number associated with the Viber account that has since been identified as belonging to defendant.  Following a summons issued to his cell carrier in February, 2021, and subsequent queries to the Massachusetts Registry of Motor Vehicles and Bristol County Registry of Deeds, defendant was identified as the owner of the subject phone number and his address was discovered.  Law enforcement conducted surveillance of his suspected address in October,

-4-

2021, and determined that a car registered to him was present there.

### B.  The Description of Viber

The Affidavit submitted by Agent Ronayne explains the direct and implied intricacies of Viber's functionality.  At the outset, she described the services and actions offered by Viber, the process a prospective user must follow to register an account and information about how group chats work on the Viber platform.  She explained that communications are end-to-end encrypted on Viber and that users may delete content they previously shared.

With respect to group chats, Agent Ronayne stated that groups are private, comprise of multiple people and are not subject to content restrictions or extensive moderation.  She noted that group chats are run by an "admin", or multiple "admins", that can remove other members from a group.  Groups include a list of members on the side of the group and in an "Info" screen for the group.  That list shows, <u>inter</u> <u>alia</u>, the username and phone number of all the group's members.  Groups cannot be searched by the public and new members of a group may only join by clicking a direct link or by invitation.

There are two statements in the Affidavit that defendant challenges and the government, after review, admits are incorrect.  First, according to the Affidavit, users who join an

existing group will, at the time they become members, obtain access to "the entire chat history and content sent since the inception of the group."  In fact, members of Viber groups – in contrast to other kinds of multi-person chats known as Viber channels and communities – do not have such access.  Second, Agent Ronayne stated that groups "require[] affirmative steps on the part of their members to join these groups."  The government now admits that a user may become a member of a Viber group by being invited to the group in question and without taking any affirmative steps to join.

## II.  <u>Motion to Suppress</u>

In support of his motion to suppress the evidence obtained by the 2021 Warrants, defendant raises three arguments:

1) The magistrate judge erred in finding that Agent Ronayne's affidavit established probable cause for the issuance of a warrant,

2) Defendant is entitled to a <u>Franks</u> hearing because probable cause for the search warrants relied on false statements or material omissions in the Affidavit and

3) There is no good faith exception, in this case, to the rule that the evidence obtained from the purportedly invalid 2021 Warrants should be excluded.

**A.  Probable Cause for the Search Warrants**

**1.  Legal Standard**

A magistrate judge is entitled to "great deference" as to her finding of probable cause. <u>Illinois</u> v. <u>Gates</u>, 462 U.S. 213, 236 (1983).  The decision to issue a search warrant should be reversed only if there is "no substantial basis for concluding that probable cause existed." <u>United States</u> v. <u>Dixon</u>, 787 F.3d 55, 58-59 (1st Cir. 2015) (citation omitted).

Probable cause exists when, based upon common sense and the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238.  A warrant application must demonstrate probable cause to believe that (1) a crime has been committed -- the "commission" element, and (2) enumerated evidence of the offense will be found at the place searched -- the "nexus" element. <u>United States</u> v. <u>Feliz</u>, 182 F.3d 82, 86 (1st Cir. 1999).

**2.  Application**

The totality of the circumstances here, as set forth in the Affidavit, established a fair probability that the 2021 Warrants would uncover evidence of defendant's knowing receipt and possession of child pornography.  The Affidavit explains that defendant was observed as a member of four groups – referred to as Groups A, B, C and D - which were used to exchange child

pornography.  The groups each had between 100 and 250 members and none was publicly listed.  Rather, the groups could be joined only be someone who had a direct link or who was specifically invited.

The Affidavit describes that the exchange of child pornography often occurs in the context of groups of like-minded individuals who maintain one another's contact information in order to communicate and share illegal content.  Those facts suggest that defendant was in contact with consumers of child pornography who, whether by sending him a direct link or an invitation to his Viber account, purposefully extended group membership to defendant based upon their shared interest in child pornography.  As the Fourth Circuit Court of Appeals has found:

> [T]he likelihood that a specific filesharing page
> containing child pornography would find its way to
> somebody uninterested in such contraband - thereby
> exposing its distributors to detection, capture, and
> loss of their materials - is probably quite low.

United States v. Bosyk, 933 F.3d 319, 327-28 (4th Cir. 2019).

Although the Affidavit does not establish that images or videos depicting child pornography were shared on the specific days on which Defendant was observed as a member of Groups A, B, C or D, it does aver that dozens of such images and videos were shared at or about the time defendant was a confirmed member. With respect to groups B, C and D, defendant was found to be a

-8-

member on at least three different occasions: 1) Sometime between September 20, 2020, and June 14, 2021, 2) June 28, 2021 and 3) September 24, 2021.  The fact that defendant was a member, on multiple dates, of multiple private groups used to exchange child pornography provides a substantial basis for finding probable cause to believe he knowingly received and accessed at least some illicit content.  This conclusion is bolstered by Agent Ronayne's confirmation that two of the groups had names and profile pictures that referenced or depicted child pornography.

Further, the Affidavit explains that evidence of the subject child pornography offenses was likely to be found on a cell phone, computer, hard drive or other media storage device located on the defendant's person or at his residence.  Such evidence could include illegal content itself or related forensic electronic evidence, such as file metadata or internet history.  Thus, the Affidavit also demonstrated a nexus between the offenses under investigation and the objects of the 2021 Warrants.

Defendant contends, however, that "the only way" to determine the existence of probable cause would have been for the magistrate judge to watch recordings of the messages and content shared in the subject groups.  According to defendant, such a review was necessary in order for the magistrate judge to

verify whether the groups were focused on the exchange of child pornography.  To the contrary, the magistrate judge was not required to view the actual images and videos purportedly depicting child pornography.  It was appropriate for her instead to review a "detailed, factual description" of the images and videos at issue. United States v. Brunette, 256 F.3d 14, 18 (2001).

The Affidavit here described in detail the sexually explicit nature of the content and the body size and development of the persons depicted. See United States v. Syphers, 426 F.3d 461, 467 (1st Cir. 2005) (noting the importance of including a "detailed description of the physiological features of the persons depicted" in the affidavit in order to establish that they were children).  Thus, the Affidavit contained a "sufficiently specific description of the images" to support the magistrate judge's probable cause determination. Id.

Defendant also suggests that the volume of child pornography exchanged in the four groups was insufficient to show that the groups were focused on child pornography.  The Affidavit explains, however, that 83 files depicting child pornography were shared in Group A in the months prior to February 12, 2021, and 34 such files were shared across Groups B, C or D from September 20, 2020, to June 14, 2021.  Even though that is fewer images and/or videos than have been found

-10-

in other cases, there is no requirement that thousands of
illegal files must be discovered.  Nor was the magistrate judge
required to review the screen recordings of the groups and
compare the number of files depicting child pornography to the
number of files unrelated to child pornography.  Rather, it was
proper for the magistrate judge to find that the exchange of
dozens of pornographic images and videos of children in four
private groups, of which defendant was a member at or near to
the dates on which that content was shared, yielded a fair
probability that the 2021 Warrants would uncover evidence of a
crime.  Syphers, 426 F.3d at 465 ("Probable cause only requires a
probability or substantial chance of criminal activity, not an
actual showing of such activity.").

   B.  **Franks Hearing**

      1.  **Legal Standard**

   A sworn affidavit filed in support of a search warrant is
entitled to a presumption of validity.  See United States v.
Rigaud, 684 F.3d 169, 173 (1st Cir. 2012); see also Gates, 462
U.S. at 236 (holding that "courts should not invalidate warrants
by interpreting affidavits in a hypertechnical, rather than a
commonsense, manner.") (cleaned up).  A defendant, however, may
attempt to rebut that presumption and challenge the veracity of
an affidavit at a so-called Franks hearing.  In order to

demonstrate his entitlement to a <u>Franks</u> hearing, a defendant
must make

> a substantial preliminary showing that [1] a false
> statement knowingly and intentionally, or with
> reckless disregard for the truth, was included by the
> affiant in the warrant affidavit, and [2] the
> allegedly false statement is necessary to the finding
> of probable cause . . . .

<u>Franks</u>, 438 U.S. at 155-6.  The defendant must make a sufficient
showing as to both elements or else the request for a hearing
will fail. <u>See</u> <u>Rigaud</u>, 684 F.3d at 173.

The omission of a material fact from an affidavit may also
entitle a defendant to a <u>Franks</u> hearing. <u>See</u> <u>United States</u> v.
<u>Lanza-Vazquez</u>, 799 F.3d 134, 141 (1st Cir. 2015).  The defendant
must show that the omission was intentional or reckless and that
the omitted information, if presented to the magistrate judge,
would have vitiated the finding of probable cause. <u>See</u> <u>United
States</u> v. <u>Tanguay</u>, 787 F.3d 44, 49 (1st Cir. 2015).

With respect to showing an affiant's reckless disregard for
the truth in making a false statement, the First Circuit Court
of Appeals has held that such disregard

> may be established where an [affiant] in fact
> entertained serious doubts as to the truth of the
> allegations or where circumstances evinced obvious
> reasons to doubt the veracity of the allegations in
> the application.

<u>Burke</u> v. <u>Town of Walpole</u>, 405 F.3d 66, 81 (1st Cir. 2005)
(citation omitted) (internal quotation marks omitted).

Similarly, an allegedly material omission may be deemed reckless if the omission was "critical to the determination of probable cause" or the affiant omitted facts she knew the judge would want to know. Id. at 81-82 (citations omitted).

   2.  **Application**

       **a.  Whether the False Statements and Omitted
       Information Were Necessary to the Finding of
       Probable Cause**

Because the government has since admitted that the Affidavit included two inaccurate statements with respect to the functioning of Viber groups, this Court's review of the finding of probable cause in Section II.A.2 did not refer to those statements.  Thus, as explained in that section, it was not necessary for the magistrate judge to rely on those portions of the Affidavit to reach her determination.  In addition to the two statements that the government admits were incorrect, defendant contends that the Affidavit contained the false and/or misleading statement that

       HSI Phoenix was able to capture screen recordings that
       document the members of these three additional groups
       and the content of communications among members –
       including the SUBJECT ACCOUNT – from approximately
       September 20, 2020 through June 14, 2021.

Defendant contends that this statement is false because his account did not send out communications or show up as "active" in any of the referenced screen recordings.  The Affidavit,

-13-

however, simply elaborates on the "members" of the groups by
noting that defendant was included in the list of member
accounts during the subject time period.  Although it is
conceivable but unlikely that the magistrate judge may have
inferred defendant was actively sending communications to the
rest of the group based upon that statement, the exclusion of
that hypothetical inference would not have affected her finding
of probable cause in any event.

Defendant also describes several omissions from the
Affidavit that he claims were material.  The Court evaluates
those omissions to determine whether, "if incorporated into the
affidavit," they would vitiate the magistrate judge's
determination as to the existence of probable cause.  Tanguay,
787 F.3d at 49.  Several of the allegedly material omissions are
additional technical details about the functionality of Viber.
For instance, defendant avers that Agent Ronayne failed to
mention that: 1) group names, as well as group profile pictures,
can be changed by anyone in a group, 2) an "active" tag would
have appeared next to his username whenever he was present on
Viber and 3) it was possible for investigators to see who had
opened a file by clicking on it.  Having reviewed the Affidavit,
the Court concludes that the additional identified details about
Viber do not undermine the evidence that Agent Ronayne included
in the Affidavit.

First, the ability of group members to change a group's name as well as its picture is consistent with the information already disclosed in the Affidavit and does not lead to any exculpatory inferences with respect to the defendant's membership in the groups at issue.  Second, the fact that defendant did not happen to be listed as "active" in the Viber application at the precise times when investigators captured screen recordings of the groups is not in conflict with anything in the Affidavit.  Agent Ronayne proffered evidence that showed defendant was a member of Groups A, B, C and D.  She did not claim that he was actively viewing content or sending messages exactly when investigators were recording the groups.  Third, disclosure of the fact that one can click on a file shared in a Viber group to see who has opened that file would not have undermined a finding of probable cause which did not rely on defendant having viewed specific images or videos.  Nor did Agent Ronayne have an independent duty to catalogue every detail concerning the Viber application or every action that defendant or the investigators did not take. Tanguay, 787 F.3d at 49 ("[T]here is no requirement that every shred of known information be included in a warrant affidavit . . . .").

Defendant is correct that, if a description of those aspects of the Viber application had been included in the Affidavit, the information likely would not have contributed to

the magistrate judge's finding of probable cause.  The same can
be said for the facts that defendant did not have a prior
criminal record or a known proclivity for child pornography.
The question is, however, whether the omitted facts would have
vitiated the magistrate judge's finding of probable cause.  As
to that inquiry, the Court finds that inclusion of the
information omitted by Agent Ronayne would not "have led to a
negative finding by the magistrate on probable cause." Rigaud,
684 F.3d 173 n.5 (emphasis omitted) (quoting United States v.
Castillo, 287 F.3d 21, 25 n.4 (1st Cir. 2002)).

Defendant next submits that he could have been added to the
subject Viber groups without receiving any notice and claims
that this "omission" is another material deficiency of the
Affidavit.  The evidence that defendant cites does not, however,
support his claim.  If anything, the cited Viber help page
contains other information, concerning steps that occur in
between a user receiving a group invitation from a non-contact
and the user entering that group, that would have contributed to
a finding of probable cause.  With respect to notice, the Viber
help page in question provides that:

> Select *Control who can add you to groups* if you no
> longer want to be added to groups by people that
> aren't on your contact list.*
>
> *You will not be notified if a person who isn't on
> your contact list tries to add you to a group.

On its face, such information does not establish that a Viber user can be added to a group without receiving notice of that addition.  Instead, the page states that a user who has elected to receive group invites only from users on his contact list will not receive a notice when a non-contact tries and fails to add him to a group.  As a result, the lack of notice raised by defendant does not occur when a user is added to a group but rather when a user is <u>not</u> added to a group.  The "omission" that defendant argues should have been included in the Affidavit does not appear to be an accurate description of the Viber application.

Finally, defendant points to the totality of the inaccurate statements and omitted information and contends that, in light of those purported deficiencies, the Affidavit fails sufficiently to connect defendant to any of the child pornography exchanged in the four groups.  Defendant asserts that the Affidavit shows nothing more than mere association with others who possessed contraband and concludes that mere association cannot support a finding of probable cause. <u>See</u> <u>United States</u> v. <u>Barnes</u>, 890 F.2d 545, 549 (1st Cir. 1989) (holding that "mere association or mere presence with one who possessed contraband is not enough" to show constructive possession).

The Affidavit is not, however, limited to showing that defendant was merely associated with Viber users who had received or possessed child pornography separate from their connection to the defendant.  To the contrary, the Affidavit establishes that he was a member of the very same chat groups in which those users were exchanging the contraband at issue.  In a circumstance such as this one, after considering the full scope of the Affidavit and accounting for the information that was either inaccurate or omitted, there was probable cause to believe that defendant had knowingly received and possessed child pornography.

### b.  Whether the False Statements Were Made, and Facts Were Omitted, Intentionally or Recklessly

As explained above, defendant has failed to show that the false statements and allegedly misleading omissions here were necessary to the finding of probable cause by the magistrate judge. See Franks, 438 U.S. at 156.  Although that alone is reason to deny defendant's request for a hearing, the Court will also consider whether Agent Ronayne made the incorrect statements and omitted facts "knowingly and intentionally, or with reckless disregard for the truth". Id. at 155.  Defendant does not proffer any facts, nor does the Court perceive any, tending to show that Agent Ronayne intentionally made false statements or material omissions from the Affidavit.  Thus, the

Court will consider whether Agent Ronayne's challenged statements or omissions were made with reckless disregard for the truth.

The aspect of the Affidavit that poses the greatest cause for concern is Agent Ronayne's inclusion of a pair of statements that the government has since determined to be incorrect.  The Affidavit inaccurately asserts that a new member of an existing group will obtain access to "the entire chat history and content sent since the inception of the group," and that a user is required to take "affirmative steps" to become a member of a group.  In essence, both of those statements result from Agent Ronayne mistakenly attributing characteristics of Viber channels and/or communities to Viber groups.

Even those statements, however, do not appear to have been made with reckless disregard for the truth.  Agent Ronayne's conflation of certain aspects of channels and/or communities with those of groups, in the context of a large and complex investigation, evinces a degree of negligence that, although unfortunate, does not rise to the level of recklessness. See United States v. Patterson, 877 F.3d 419, 424 (1st Cir. 2017) (holding that "even negligent [inaccuracies] are not enough to warrant a Franks hearing") (quoting United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003)).  It would require "too much speculation" to conclude that her conflation was the result of

-19-

anything other than a careless mistake. Id. at 425. Finally, to the extent defendant argues the inaccuracies should have been discovered by further investigation, the Court agrees with the government that there was no "red flag" that would have prompted Agent Ronayne to conduct such an investigation before submitting her affidavit. See United States v. Barbosa, 896 F.3d 60, 71 (1st Cir. 2018).

With respect to the purportedly material facts that were omitted from the affidavit, the Court finds that none was "critical to the probable cause determination." Burke, 405 F.3d at 81. Many of the omissions identified by defendant were technical facts about Viber. Such details do not disturb the ultimate finding of probable cause or conflict with the rest of the Affidavit. Likewise, omissions pertaining to defendant's background or investigative steps not taken were, in the context of the entire affidavit, immaterial. A reasonable affiant would not expect the magistrate judge to want to know details irrelevant to her determination of probable cause. As Agent Ronayne explained, the Affidavit was

> submitted for the limited purpose of establishing
> probable cause in support of the application for a
> search warrant [and] does not set forth each and every
> fact that I or others have learned during the course
> of this investigation.

The Court concludes, accordingly, that neither the inclusion of the two incorrect statements nor the omission

-20-

of the facts identified by defendant was done intentionally or with reckless disregard for the truth.

**C.** <u>**Leon**</u> **Good Faith Exception**

The parties do not address the applicability of the good faith exception established in <u>United States</u> v. <u>Leon</u> to the present case in detail. 468 U.S. 897 (1984).  Defendant briefly argues that the <u>Leon</u> good faith exception would not apply and the government summarily counters that it would.  Because the Court has found that the magistrate judge did not err in issuing the 2021 Warrants and that defendant is not entitled to a <u>Franks</u> hearing with respect to the Affidavit, it need not venture farther afield to address the good faith exception.

**ORDER**

For the foregoing reasons, the motion of defendant to suppress evidence and for a <u>Franks</u> hearing (Docket No. 51) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  November 9, 2022