UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No:  21-CR-10365-NMG |
| ) | |
| ROBERT DAVID AUSTIN, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Robert David Austin has pled guilty to the above-docketed indictment, which charges him with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a sentence that includes a term of incarceration of 87 months and a term of supervised release of 60 months.

**FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 7 through 28 of the Presentence Investigation Report ("PSR"), as well the assessment provided by the United States Probation Office ("Probation") as to the defendant's offender characteristics (PSR at ¶¶ 58-78).

To summarize the relevant facts briefly:  This case began when Homeland Security Investigations ("HSI") special agents observed the defendant present in various online, large-scale chat groups on the Viber chat application that were dedicated to the exchange of child pornography.  (PSR at ¶ 8.) The defendant's username was "nastermcnaster," and his account was associated with his telephone number.  (*Id.*)

On November 3, 2021, investigators executed federal warrants to search the defendant's residence and person, and located three electronic devices: a Samsung Galaxy S20, a Samsung Galaxy tablet, and a Samsung Galaxy S9. (PSR at ¶ 9.)[1]

HSI performed a forensic analysis of the devices and recovered approximately 1252 images and 450 videos depicting child pornography, including at least 17 videos that were over five minutes in length. (PSR at ¶¶ 13, 15, 22, 26.) Many of the files were associated with the Viber and Telegram chat applications, as well as other similar applications. (*Id.*). Overall, the child pornography files recovered on the three devices depicted children of approximately less than one year old through approximately 12 years old, though the files predominantly featured prepubescent female children who were approximately six to 10 years old. (PSR at ¶ 14.) Some of the files depicted bondage, bestiality, and the vaginal and oral penetration of prepubescent minors. (*Id.*) For example, the files included: (1) on the Samsung Galaxy S20, a 46-second video depicting an infant less than one year old who has his or her diaper pulled down while an adult male attempts to insert his erect penis into the infant's anus; (2) on the Samsung Galaxy S20, an image depicting a female child between eight to ten years old who is laying on her back with her arms and legs outstretched, tape covering her mouth, and clothespins attached to her nipples and vaginal area; (3) on the Samsung Galaxy S9, a 62-second video depicting a female child between four to six years old who is sitting between the legs of a nude adult male with her hands around the male's erect penis and at times, with the male's erect penis in her mouth, and eventually with ejaculate spilling from her mouth; and (4) on the Galaxy Tablet, a 42-second video depicting a female child between four to six years old who is laying on her back while an adult male directs his erect penis into her vagina and eventually ejaculates onto her lower abdomen. (PSR ¶¶ 16, 23, 28.)

---

[1] Each of these devices was manufactured in Vietnam. (PSR at ¶ 12.)

The activity that investigators reviewed indicated that the defendant's conduct related to child pornography took place for about two and a half years, from approximately June 2019 through November 2, 2021. (PSR ¶ 14). The defendant was actively receiving and viewing child pornography through the Viber application as of the afternoon of November 2, 2021 (PSR ¶ 21), and nothing in the record suggests he would have stopped doing so had investigators not arrived at his home first thing the following morning. When investigators confronted the defendant, he denied ever using chat applications like Viber. (PSR ¶ 10).

Investigators observed that the defendant had taken various steps to conceal and preserve his collection of child pornography. For example, on each of the defendant's three devices, he set up a secure folder, which is an encrypted and password-protected space hidden within a file system. (PSR at ¶¶ 17, 24, 27.) The applications that the defendant used to access child pornography were saved within the secure folders that he set up. (PSR at ¶¶ 17, 24.) For example, on the Galaxy S20, the Viber chat application was installed within the secure folder, and through that application, the defendant received and read approximately 132 messages containing child pornography. (PSR at ¶¶ 17-18.) Within Viber and Telegram, the defendant set up chat groups called "MiChaNel," in which he was the only member, and used those groups to send child pornography files to himself. (PSR at ¶¶ 19, 24.) Other files depicting child pornography were saved in the "Downloads" folder within the secure folder. (PSR at ¶ 20.)

## DISCUSSION

I. **Sentencing Guideline Calculation, Victim Impact, Restitution, Special Assessments, and Fine**

Sentencing Guideline Calculation

Based on its computation of the defendant's total offense level as 31 and his criminal history category as I, Probation has calculated a Guidelines sentence in this case to include a term

of incarceration from 108 to 135 months and a range of supervised release from five years to life. (*See* PSR ¶¶ 48, 52, 80, 82). The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, and thus agrees with its determination of his Guidelines Sentencing Range ("GSR"). Probation's calculations match those of the parties, which are reflected in their plea agreement. (Dkt. No. 83, at 2-3.)

As outlined below, the government believes that a practical application of the Guidelines may differ in one respect from this technically correct calculation of the GSR. The government took this difference into account in determining the agreed-upon resolution in the parties' plea agreement and the sentence it now recommends. (Dkt. No. 83, at 3-4).

Victim Impact

The government has identified 171 child pornography series in this case and provided victim impact statements from 25 victims to defense counsel and Probation. The government understands that Probation has provided these victim impact statements to the Court as an attachment to the PSR.

The 25 victims who have submitted statements describe the trauma they have experienced better than the government ever could. They describe how they are made to "suffer twice": First, at the time of their sexual abuse as children, and second, when people like the defendant view images of that abuse for their sexual gratification. As a result, they receive a "lifelong sentence of abuse and exploitation." These victims' words provide an important reminder that this defendant's crime is not victimless, but rather causes real and significant harm to children and their families.

Restitution

The government submitted restitution requests to the defendant on behalf of 20 victims implicated in this case and the defendant has agreed to pay the restitution amounts requested. The

victims' submissions can be made available to the Court at the Court's request. The parties request that the Court order a total of $129,500.43, as detailed below:

| Series Name | Identified Victim (pseudonym; ONLY those in images) | Restitution requested |
|---|---|---|
| 8kids4 | John Doe IV | $5,000 |
| At School | Violet | $10,000 |
| BEST NECKLACE | Maria | $7,500 |
| Marineland1 | Sarah | $10,000 |
| Vicky | Lily | $10,000 |
| Lighthouse1 | Maureen | $10,000 |
| Surfer Hair | Jessy | $5,000 |
| Sweet Purple Sugar | Ava | $5,000 |
| Sweet White Sugar | Pia | $5,000 |
| Misty | Amy | $10,000 |
| Ashley_081 | | $3,000 |
| Angela | | $3,000 if paid upfront $4,000 if paid overtime* |
| aprilblonde | April | $4,000 if paid upfront $5,000 if paid overtime* |
| JBN Flowers1 | Jen | $3,000 if paid upfront $4,000 if paid overtime* |
| CinderblockBlue | Jane | $10,000 |
| Jenny | | $10,000 |
| Middle Model Sister | Anna | $3,000 |
| Tara | | $3,000 |
| BluesPink1 | Fiona | $10,000 |
| HG1 | Lily | $3,000 |
| | **Total** | $129,500.43 ($132,500.43 if paid overtime*) |

(PSR ¶ 31).

The requested amounts are reasonable determinations of the losses incurred and reasonably projected to be incurred in the future, and they are the proximate results of the defendant's offenses. 18 U.S.C. § 2259(c)(2). The victims' submissions demonstrate that the losses are attributable to the statutory sources, namely medical services, physical and occupational therapy and rehabilitation, transportation, housing, childcare, lost income, attorney's fees, and other "relevant

losses incurred by the victim." 18 U.S.C. § 2259(c)(2)(A)-(F). The requested amounts are not "token or minimal," but instead comprise a "reasonable and [circumscribed] award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Paroline v. United States*, 572 U.S. 434, 459 (2014). Accordingly, the parties request that the Court order a total of $129,500.43 pursuant to 18 U.S.C. § 2259 and *Paroline.*

Because victims have a right to full and timely restitution under the Crime Victim Rights Act, *see* 18 U.S.C. § 3771(a)(6), the government further requests that the defendant's restitution payments begin during the period of his incarceration.

Special Assessments

As this Court is aware, Title 18, United States Code, Section 3014 provides that courts "shall assess an amount of $5,000 on any non-indigent person" convicted of enumerated offenses related to human trafficking and sexual exploitation, including distribution and possession of child pornography in violation of 18 U.S.C. § 2252A. *Id.* § 3014(a). The government defers to the Court but does not advocate for imposition of this "JVTA" assessment here because the defendant will be responsible for paying a substantial amount of restitution. Similarly, because the defendant will be required to pay a significant amount of restitution to victims specifically identified, the government does not advocate for the imposition of the "AVAA" assessment pursuant to 18 U.S.C. § 2259A.[2]

---

[2] Monies paid under this section are deposited and pooled in the "Child Pornography Victims Reserve" established in 18 U.S.C. § 2259B, which is the fund from which child pornography victims may, if they so choose, receive a one-time fixed amount of compensation instead of seeking restitution on a case-by-case basis.

Fine

The parties have agreed in their plea agreement that the government will not seek a fine if the defendant is required to pay restitution. (Dkt. No. 83, at 3.)

## II.     Application of the Section 3553(a) Factors

Although the GSR applicable in this case represents a significant range of punishment, the government contends nonetheless that a sentence derived from the application of appropriate Guidelines enhancements to the defendant's conduct is one that fits the crimes that the defendant has pled guilty to. Based on an evaluation of the § 3553(a) factors, this Court should impose the government's recommended sentence, which includes a term of incarceration of 87 months and correlates to the government's interpretation of the specific offense characteristics that should be considered in this case. The government recognizes that it is difficult to quantify exactly how many months would satisfy the Court's obligation to impose a sentence that is just, that adequately would deter both this defendant and others who might commit the same type of crime, and that would protect the most vulnerable members of our society. Ultimately, this Court can be confident that the government's proposed sentence will achieve these goals of sentencing. A sentence tethered to the Guidelines in the manner the government suggests is reasonable and warranted in this case because the applicable enhancements accurately reflect and account for the nature and circumstances of the defendant's offenses, as described briefly below:

Group 1: Counts 1 & 2 (Receipt and Possession of Child Pornography)

a.     **§ 2G2.2(b)(2) (prepubescent minor)**: The government agrees with Probation's assessment of this enhancement. This defendant's large collection consisted mainly of images of children in the range of six to ten years old, which distinguishes him from many other defendants who possess, distribute, receive, and produce images of children who are *not* prepubescent. This

7

distinction merits heightened punishment given that a victim's vulnerability often directly correlates to his or her age. This defendant should be held accountable for his victimization of the most vulnerable members of our society through the application of this enhancement.

      b.    **§ 2G2.2(b)(4)(A) and (B) (sadistic/masochistic conduct and exploitation of infant/toddler)**: The government agrees with Probation's assessment of this enhancement. This defendant had images in his collection depicting the abuse of toddlers, such as an image of a female toddler approximately two to three years old who is holding an adult male's erect penis with her two hands and the erect penis in her mouth. (PSR at ¶ 16.) The defendant also had a 46-second video depicting an infant less than one year old who has his or her diaper pulled down while an adult male attempts to insert his erect penis into the infant's anus. Another image in the defendant's collection depicted a female child between eight to ten years old who is laying on her back with her arms and legs outstretched, tape covering her mouth, and clothespins attached to her nipples and vaginal area. A consumer of this type of material should be held accountable for his conduct.

      c.    **§ 2G2.2(b)(6) (use of a computer)**: The government agrees with Probation's assessment of this enhancement. However, the government concedes that in many cases, the application of this enhancement makes less sense than some others, given that virtually all child pornography offenses today involve the use of computers. Here, the defendant's use of technology to facilitate his criminal behavior was not so sophisticated as to merit the application of this enhancement. So, while the government believes that Probation appropriately included the enhancement in its GSR calculation, and the government also did so in the parties' plea agreement, the government has discounted this enhancement in fashioning its ultimate sentencing recommendation.

8

      d.      **§ 2G2.2(b)(7)(D) (number of images)**: The government agrees with Probation's assessment of this enhancement. Without even accounting for the defendant's 450 videos, each of which equates to 75 images for a total of 33,750 images, the defendant had over twice the requisite number of image files in his child pornography collection. Although it may be relativity "easy" in the modern era to obtain over 600 images depicting child pornography, that still is a long way from the 1,252 images and 450 videos of child pornography that this defendant had in his collection. The very fact that it is "easy" to obtain child pornography means that there often is no need for a defendant to hoard such a large number of images. That this defendant nonetheless did so, and took the above-described steps to hide and preserve his collection, demonstrates that this defendant was unwilling or unable to take the risk that he would not have a large amount of child pornography within reach at all times. This defendant also was actively receiving child pornography right up until federal agents arrived at his home, and nothing in the record suggests he otherwise would have stopped adding to his child pornography collection. The enhancement should apply in such circumstances.

\*\*\*

    According to Probation's and the parties' technically correct calculation of the Guidelines, the defendant would face a GSR of 108 to 135 months. (PSR ¶ 80). If the Court were to apply the Guidelines in the manner suggested by the government (*i.e.*, by discounting the two-level "use of computer" enhancement), the defendant would have a total offense level of 29, which corresponds to a GSR of 87-108 months. The government recommends a term of incarceration of 87 months, which is the low end of this "practical interpretation" of the Guidelines.

      A sentence of 87 months is appropriate here because of the nature and circumstances of this defendant's crime. It is true that the defendant faces a mandatory minimum sentence of five

9

years, and the government is advocating a sentence of over seven years, but this is not a case involving a small collection of child pornography, a single instance of receipt or possession, or the consumption of child pornography over a short period of time. This defendant possessed well over a thousand images and 450 video files, and his conduct related to child pornography spanned nearly two-and-a-half years, from June 2019 through the execution of the federal search warrants in November 2021. Nothing in the record suggests that the defendant would have stopped collecting child pornography but for investigators' intervention. The defendant told investigators that he did not use applications like Viber and relied on encrypted, passcode-protected secure folders to hide his child pornography collection, which included multiple images and videos, on multiple devices, of children as young as two to four being sexually assaulted, including a video of an infant in a diaper being anally penetrated by an adult man. Fortunately, despite these efforts, the defendant's conduct was discovered.

The government recognizes that it always is difficult to quantify in months or years "how much" is "enough" to achieve the goals of sentencing. While the government's recommended sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, to provide for the long-term protection of the public.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence that includes an 87-month term of imprisonment, to be followed by 60 months

of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the defendant's offenses and achieve the goals of sentencing.

                              Respectfully Submitted,

                              JOSHUA S. LEVY
                              Acting United States Attorney

Date: August 9, 2023        By:   /s/ Meghan C. Cleary
                              Meghan C. Cleary
                              Suzanne Sullivan Jacobus
                              Assistant United States Attorneys
                              United States Attorney's Office
                              One Courthouse Way
                              Boston, MA 02210
                              (617) 748-3100

**CERTIFICATE OF SERVICE**

    I, Meghan C. Cleary, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: August 9, 2023

                                         /s/ Meghan C. Cleary
                                         Meghan C. Cleary
                                         Assistant United States Attorney